Case No. 08 CV 1794                                              3007051-ELS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PRACTICE MANAGEMENT SUPPORT SERVICES, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | Case No.  08 CV 1794 |
| Plaintiff, | ) | |
| v. | ) | Judge James F. Holderman |
| | ) | |
| CODING STRATEGIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR BIFURCATION OF DISCOVERY
### PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 1 AND 26

**NOW COMES** Defendant, CODING STRATEGIES, INC., by and through its attorney, Eric L. Samore of SmithAmundsen LLC, and moves this Honorable Court to enter an order bifurcating discovery in this case.  In support of this motion, Defendant states as follows:

## I.    STATEMENT OF THE CASE.

Plaintiff has filed a Class Action Complaint on its own behalf and on behalf of an unknown class of persons over the purported sending of unsolicited faxes by Defendant in violation of the Telephone Consumer Protection Act ("TCPA").  (Pl.'s Class Action Compl. attached hereto as **Exhibit 1**.)  Specifically, Plaintiff avers that on or about several dates in 2006, Defendant transmitted by facsimile three unsolicited advertisements to plaintiff's facsimile machine. (¶¶ 11-12.)  Plaintiff attaches the three alleged 2006 facsimiles to the Complaint.

Defendant Coding Strategies, Inc. ("CSI") has defenses to the individual claim of the named plaintiff, Practice Management Support Services, Inc., (PMSSI').  There was no violation of the TCPA, since the subject faxes were *not unsolicited*, and that there was an existing business relationship between the PMSSI and CSI.

Case No. 08 CV 1794                                                          3005942ELS

The affidavit of the President of CSI is attached hereto as **Exhibit 2**. CSI is a medical coding and compliance firm that specializes in auditing, education, reference tools and support services nationwide. The clients of CSI are hospitals, physician practices, and third-party providers of medical coding and billing services to healthcare providers. (¶¶ 1 and 3) PMSSI is a Chicago based company provides custom billing, accounts receivable management, and consultation services for a wide variety of medical specialties. PMSSI is in the exact same industry as CSI's other customers. (¶ 4) The Healthcare Billing and Management Association (HBMA) for Third Party Medical Billers is a non-profit national trade association for professional billing companies. (¶ 5) CSI is a vendor member of the HBMA. Employees of CSI attend the HMBA Conference each year as part of the marketing process. (¶ 6)

Both CSI and PMSSI attended the September 2005 HBMA Conference in Chicago, where CSI had a booth. (¶¶ 7, 8, 9, 10, 11) CSI's business records indicate that prior to the September 2005 HBMA Conference, CSI did not have the fax number for PMSSI. (¶ 12)

CSI's business records and customary business practices indicate: that CSI's sales manager spoke with Zulaski, President of PMSSI at the September 2005 HBMA Conference in Chicago, Illinois; and that during this meeting Zulaski expressed an interest in purchasing goods or services from CSI and provided his company's contact information, including the fax number. (¶¶ 13 through 27)

In light of its defenses, Defendant's counsel has suggested this phasing to Plaintiff's counsel; however, Plaintiff's counsel would not agree to bifurcation. Defendant believes that for efficiency purposes, the discovery of this case should first explore the Plaintiff's individual claims and only then probe into class-wide issues.

## II. BIFURCATION OF THE DISCOVERY BETWEEN THE INDIVIDUAL PLAINTIFF'S CLAIM AND THE CLASS CLAIMS WILL PREVENT UNNECESSARY EXPENSES AND BE MORE EFFICIENT.

Bifurcation of discovery will result in more efficient adjudication of this matter because phasing discovery will allow an immediate determination on the substantive issues to be shown by CSI prior to the expending of considerable time and expense analyzing whether class members exist, whether a class construct is appropriate and whether the class-wide claims have merit.  By determining the merits of the individual claim, first, this case will comply with the requirement that the rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action."  FED. R. CIV. PRO. 1 (1993).

> **A.    The Court Has Discretion To Bifurcate The Discovery Into Individual Issues And Class Issues As Requested.**

Whether to bifurcate discovery is a matter left to the discretion of the trial court.  *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2004 U.S. Dist. LEXIS 4698, Case No. 02 C 2523, at *2 (N.D. Ill. March 22, 2004).  Although in most circumstances, a judge should determine whether to grant or deny certification of a class prior to ruling on the merits, if "'as soon as practicable' occurs after a case is 'ripe for summary judgment' then it might be proper for a judge to consider" a dispositive motion on the single claim "prior to considering a motion for class certification."  *Chavez v. Ill. State Police*, 251 F.3d 612, 629-30 (7th Cir. 2001)(citing *Cowen v. Bank United*, 70 F.3d 937, 941 (7th Cir. 1995)).  Determination of dispositive issues as to this individual Plaintiff's case, prior to class-wide discovery is therefore appropriate because "if the court determines that the named plaintiff['s] claims lack merit," such a decision "'ordinarily, though not invariably,…disqualifies the named plaintiffs as proper class representatives.'"  *Id.*  This would then resolve "the issue of class certification."  *Id.*

Also, the 2003 amendment to the Federal Rule of Civil Procedure 23 changed the requirement of "as soon as practicable" for determination of the class to "an early practicable time."  *Stavroff v. Midland Credit Mgmt. Inc.*, 2005 U.S. Dist. LEXIS 11640, Case No. 3:05-C-127, at *3-*4 (N.D. Ind. June 8, 2005).  The 2003 Advisory Committee Notes state: "'a party

opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.'" *Id.* at *4. Therefore, if "deciding the merits would help to determine whether the certification is proper based upon the claims of the named representative, bifurcation may be proper." *Id.*

Therefore, in this vein, Defendant proposes this bifurcation because this phasing of discovery will result in judicial efficiency for this matter and cost savings to the Parties and the Court. *See Am. Nurses' Assn. v. Ill.*, 1986 U.S. Dist. LEXIS 20447, *7-9 (N.D. Ill. September 12, 1986); *see also Bilal v. Wolf*, 2007 U.S. Dist. LEXIS 41983, Case No. 06 C 6978, at *1-*2 (N.D. Ill. June 6, 2007)(granting defendants' motion to stay discovery as the court had "extremely broad discretion in controlling discovery.")

**B.    Bifurcation Is Appropriate Because Even At The Outset Of This Matter It Is Unclear Whether The Individual Claim by Plaintiff Has Merit.**

Here, bifurcation of discovery will result in the type of substantial savings of time and money that the Federal Rules of Civil Procedure and the Seventh Circuit cases promote. Bifurcation of the discovery will aid in deciding the merits of the individual claim to assist, later, in determination of whether certification of a class is proper based upon the claims of the named representative. *Stavroff*, 2005 U.S. Dist. LEXIS 11640, Case No. 3:05-C-127 at *4.

This is particularly appropriate here. The current Class Action Complaint pending before this Court identifies a proposed class of all persons, who on or after a date four years prior to the filing of this action received an unsolicited fax transmittal from the Defendant. To prove its case, Plaintiff's individual case must comprise of unsolicited transmission from Defendant to Plaintiff of a facsimile. If Plaintiff cannot make this showing, then not only can Plaintiff's claim not proceed but Plaintiff could not serve as a class representative for the purported class. Therefore, since even initially it is unclear that Plaintiff will show its own claim has merit, Plaintiff should not be allowed to go on an unrestricted fishing expedition into a potential class

based upon bare averments of wrong-doing. Such breadth of discovery will result in unnecessary expense of time and cost before a determination has been made as to whether this case can be properly pursued by Plaintiff as class representative. Opening the discovery door wide, at the outset, could later be found to have been totally unnecessary and exorbitantly expensive if Plaintiff's individual claim is insufficient and lacking in merit. Therefore, for purposes of efficiency for this case, Defendant requests bifurcation of discovery.

In this case, bifurcation between discovery regarding the claims of Plaintiff, PMSSI, and discovery on the construct and merits of a class is appropriate. Defendant requests this phasing of discovery to avoid the time and expense of full-blown, merit-based, class-wide discovery until after a determination of whether the individual claim of Plaintiff has merit. The significant saving of time, expense, and burden would be evident at the outset because given the facsimile at issue, as it appears on its face, there is a question as to whether an action exists based upon transmission from Defendant to Plaintiff. In other words, based on CSI's business records, it appears that there is no merit to this claim of "unsolicited" faxing from Defendant to Plaintiff. This case should not proceed into full-blown discovery on a class-wide basis if this more efficient and effectual phasing can be utilized.

WHEREFORE, Defendant, CODING STRATEGIES, INC., respectfully requests that this Honorable Court enter an order bifurcating discovery in this case such that discovery into PMSSI's individual case against Defendant will proceed first and, only then, will the Parties proceed into discovery on a class-wide basis.

Respectfully submitted,


By:     /s/ Eric L. Samore
        Attorneys for Defendant,
        CODING STRATEGIES, INC.

Case No. 08 CV 1794                                                3005942ELS

Eric L. Samore, ARDC # 6181345
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

PRACTICE MANAGEMENT SUPPORT SERVICES,
INC., an Illinois corporation, individually and as the
representatives of a class of similarly-situated persons,

      Plaintiff,

   v.

CODING STRATEGIES, INC.,

      Defendant.

## CLASS ACTION COMPLAINT

Plaintiff, PRACTICE MANAGEMENT SUPPORT SERVICES, INC. ("Plaintiff"),
brings this action on behalf of itself and all other persons similarly situated, through its attorneys,
and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are
based upon personal knowledge, alleges the following upon information and belief against
Defendant, CODING STRATEGIES, INC. ("Defendant"):

### PRELIMINARY STATEMENT

1.  This case brings claims against Defendant for faxing unsolicited advertisements.

2.  The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a
person or entity from faxing or having an agent fax advertisements without the recipient's prior
express invitation or permission ("junk faxes" or "unsolicited faxes"). The TCPA provides a
private right of action and provides statutory damages of $500 per violation, which may be
trebled for knowing or willful violations, and authorizes injunctions against the wrongdoer. 47
U.S.C. § 227(B)(3).

3.  Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its

fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.    On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the common law of conversion, negligence, and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 and the substantially-similar consumer protection statues of other states.

5.    Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## JURISDICTION AND VENUE

6.    Jurisdiction is conferred by 735 ILCS 5/2-209 in that Defendant has transacted business in Illinois and violated state and federal law related to the matters complained of herein. Defendant does business in this state and purposefully directs its business activities at Illinois residents and Illinois fax machines.

7.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, et seq. because some of the tortious acts complained of occurred in Cook County, Illinois.

8.    Federal jurisdiction does not exist because no federal question or claim is asserted and Plaintiffs' individual claims are worth less than $75,000.00, inclusive of all forms of damages and fees. Plaintiff expressly disclaims any individual recovery in excess of $75,000.00, inclusive of all forms of damages and fees.

2

**PARTIES**

9.     Plaintiff, PRACTICE MANAGEMENT SUPPORT SERVICES, INC., is an Illinois corporation with its principal place of business in Cook County, Illinois.

10.     On information and belief, Defendant, CODING STRATEGIES, INC., is a foreign corporation with its principal place of business at Powder Springs, Georgia.

**FACTS**

11.     On or about November 1, 2006, November 16, 2006 and March 28, 2007, Defendant transmitted by telephone facsimile machine three unsolicited advertisements to Plaintiff's facsimile machine.   Copies of the three facsimiles are attached hereto as Exhibit A.

12.     Defendant knew or should have known that (i) the fax in Exhibit A was advertisements and (ii) Defendant did not have permission or invitation to send Exhibit A to Plaintiff and the other members of the class, and (iii) Defendant did not have an established business relationship.

13.     On information and belief, Defendant has sent similar unsolicited facsimile advertisements to at least 39 other recipients.

14.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving illegal faxes.  Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

15.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

16.     In accordance with 735 ILCS 5/2-801, Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

3

All persons who (1) on or after four years prior to the filing of this ← 4 yrs
action, (2) were sent telephone facsimile messages of material
advertising the commercial availability of any property, goods, or
services by or on behalf of Defendant, (3) with respect to whom
Defendant cannot provide evidence of prior express permission or
invitation for the sending of such faxes, and (4) with whom
Defendant did not have an established business relationship.

17.    A class action is warranted because:

(a)    On information and belief, the class includes forty or more persons and is
so numerous that joinder of all members is impracticable.

(b)    There are questions of fact or law common to the class predominating over
questions affecting only individual class members, including without limitation:

(i)    Whether Defendant sent unsolicited fax advertisements;

(ii)    Whether Defendant's facsimiles advertised the commercial
availability of property, goods, or services;

(iii)    The manner and method Defendant used to compile or obtain the
list of fax numbers to which it sent Exhibit A and other unsolicited faxed
advertisements;

(iv)    Whether Defendant faxed advertisements without first obtaining
the recipients' express permission or invitation;

(v)    Whether Defendant violated the provisions of 47 USC § 227;

(vi)    Whether Plaintiff and the other class members are entitled to
statutory damages;

(vii)    Whether Defendant willfully or knowingly violated the provisions
of 47 U.S.C. § 227; and

(viii)    Whether Defendant engaged in willful or wanton conduct entitling

4

Plaintiff and other members of the class to treble damages.

18.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

19.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

20.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine....," 47 U.S.C. § 227(b)(1).

21.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

22.     The TCPA provides:

> 3.     Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)    Both such actions.

23.     The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the

5

other class members even if its actions were only negligent.

24.    If the court finds that Defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award equal to not more than three times the amount available under subparagraph (B) of this paragraph.  47 U.S.C. § 227 (b)(3).

25.    Defendant violated 47 U.S.C. § 227 et seq. by transmitting Exhibit A hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation.

26.    The transmissions of Exhibit A hereto to Plaintiff and the other members of the class caused Plaintiff and members of the class the loss of time and other resources as Plaintiff and other members of the class used their time receiving, routing, and reviewing Defendant's illegal faxes.

27.    The transmissions of exhibit A hereto to Plaintiff and the other members of the class interfered with Plaintiff and other class members' exclusive use of their respective property.

28.    The transmission of Exhibit A hereto to Plaintiff and the other members of the class interfered with Plaintiff and other class members' business and/or personal communications.

29.    The transmissions of Exhibit A hereto to Plaintiff and the other members of the class interfered with Plaintiff and other class members' business and/or personal communications.

WHEREFORE, Plaintiff, PRACTICE MANAGEMENT SUPPORT SERVICES, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and

against Defendant, CODING STRATEGIES, INC., as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award the sum of $500.00 in damages for each violation;

C.    That the Court enter an injunction prohibiting Defendant from transmitting advertisements by facsimile without the recipient's prior express permission or invitation; and

D.    That the Court award costs and such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 per individual, inclusive of all damages and fees.

## COUNT II
## CONVERSION

30.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

31.    In accordance with 735 ILCS 5/2-801, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons (1) who on or after a date five years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendant, (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes and (4) with whom Defendant did not have an established business relationship.

32.    A class action is proper in that:

(a)    On information and belief the class consists of forty or more persons and is so numerous that joinder of all members is impracticable.

(b)    There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

7

(i)    Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

(ii)    Whether the facsimiles Defendant sent were material advertising the commercial availability of property, goods, and services;

(iii)    Whether Defendant sent advertising faxes without obtaining the recipient's prior express permission or invitation for the faxes;

(iv)    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements.

(v)    Whether Defendant committed conversion; and

(vi)    Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

33.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

34.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

35.    By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiff's employees' time to Defendant's own use.

36.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other

class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

37.    Defendant knew or should have known that its misappropriation of Plaintiff's resources was wrongful and without authorization.

38.    Plaintiff and the other class members were deprived of valuable resources, which because of defendant could not be used for any other purpose.  Defendant's unsolicited faxes caused unauthorized wear and tear of the class members' machines.

39.    Plaintiff and each class member suffered economic damages because they received unsolicited fax advertisements from Defendant.

WHEREFORE, Plaintiff, PRACTICE MANAGEMENT SUPPORT SERVICES, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, CODING STRATEGIES, INC., as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff counsel as counsel for the class;

B.    That the Court award appropriate damages;

C.    That the Court award costs of suit; and

D.    Awarding such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 to any individual class member.

## COUNT III
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## 815 ILCS 505/2

40.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

41.    In accordance with 735 ILCS 5/2-801, Plaintiff, on behalf of the following class

9

of persons, bring Count III for Defendant's unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons in Illinois who (1) on or after a date three years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, and (4) with whom Defendant did not have an established business relationship.

42.　　A class action is proper in that:

(a)　　On information and belief the class consists of thousands of persons in Illinois and throughout the United States and is so numerous that joinder of all members is impracticable.

(b)　　There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

(i)　　Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

(ii)　　Whether the facsimiles sent by Defendant were material advertising the commercial availability of property, goods, and services;

(iii)　　Whether Defendant sent advertising faxes without obtaining the recipients' prior express permission or invitation for the faxes;

(iv)　　The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxed advertisements;

(v)　　Whether Defendant's practice of sending unsolicited faxed advertisements violates the public policy against such faxes;

10

(vi)    Whether Defendant's practice of sending unsolicited faxes is oppressive;

(vii)    Whether Defendant's practice of sending unsolicited faxes substantially injures consumers;

(viii)    Whether Defendant's practice of sending unsolicited faxes is an unfair practice; and

(ix)    Whether Plaintiff and the other class members are entitled to recover actual damages, attorney fees, and other appropriate relief.

43.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and claims involving lawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

44.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

45.    720 ILCS 5/26-3(b) makes it a petty criminal offense to transmit unsolicited facsimile advertisements to Illinois residents and sets a $500.00 fine for each violation of this criminal statute.

46.    Defendant's unsolicited fax practice is an unfair practice, because it violates state and federal public policy. It forced Plaintiff and the other class members to incur expense without any consideration.

47.    Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Illinois statutory public policy, which public

11

policy violations in the aggregate caused substantial injury to forty or more persons.

48.    Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, and wear and tear on their facsimile machines, and the loss of employee time wasted in handling Defendant's faxes.

49.    Through its repeated misconduct, Defendant caused substantial injury to the class and caused them economic damage, including the loss of paper, toner, ink, wear and tear on their facsimile machines, and business interruption.  By faxing unsolicited advertisements to them, Defendant forced the class members to pay for Defendant's advertising campaign, when they had no obligation to pay any portion of Defendant's costs.

50.    Absent a practical mechanism for consumers to gather together to recover for the damages Defendant's unsolicited faxes caused them, there is a substantial danger that consumer facsimile machines will continue to be inundated with an avalanche of unwanted and offensive materials.

WHEREFORE, Plaintiff, PRACTICE MANAGEMENT SUPPORT SERVICES, INC., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, CODING STRATEGIES, INC., as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages to Plaintiff and the other class members;

C.    That the Court award attorney fees and costs;

D.    That the Court enter an injunction prohibiting Defendant from sending unsolicited faxed advertisements to Illinois consumers; and

12

E.    Award such further relief as the Court may deem just and proper, but in any event, not more than $75,000.00 to any individual member.

Respectfully submitted,

PRACTICE MANAGEMENT SUPPORT
SERVICES, INC., individually and as the
representative of a class of similarly-situated
persons

By:    *Brian J Wanca*

One of Plaintiff's Attorneys

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Attorney No. 51306

Max G. Margulis
MARGULIS LAW GROUP
14236 Cedar Springs Dr.
Chesterfield, MO 63017
Telephone: (314) 434-8502

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

13

**EXHIBIT A**



# Last Chance for Early Registration!
## CSI's 7th Annual CROWN Seminar Series
*Philadelphia, PA · December 4-7 | Dallas, TX · January 8-11 | Atlanta, GA · 22-25*

## 2007 Cardiology Track:

**NEW!! Invasive Cardiology** - This session is designed specifically for anyone who is coding Invasive Cardiology procedures. It will introduce new codes for 2007 and will review coding guidelines for common invasive cardiology procedures in detail. Procedures to be discussed include diagnostic cardiac catheterization, percutaneous coronary interventions, peripheral angiography, peripheral transcatheter intervention, and combined cardio-peripheral procedures. Participants will gain confidence in the assignment of codes and modifiers for these procedures through use of case study exercises.

**NEW!! Heart Rhythm Procedures** - This session is designed for anyone who is coding heart rhythm services. It will introduce new 2007 codes and will review coding guidelines for heart rhythm procedures in detail. Services to be discussed include pacemaker procedures, implantable cardioverter-defibrillator (ICD) procedures, cardiac resynchronization therapy, diagnostic and therapeutic electrophysiology procedures, and Holter monitor and cardiac event monitor procedures. Use of modifiers will also be discussed. Participants will gain confidence in the assignment of codes and modifiers for these procedures through use of case study exercises.

**For Hotel Information Visit:**
http://www.wyndhamgravatapics.com/screen.htm

### AAPC Member Price - $460
*Register Before November 10, 2006*

### Early Registration - $525
*Register Before November 10, 2006*

### Regular Registration - $585

**Multi-Session Discounts**
3 - 5 Sessions.....$20 Off Each Session
6 - 10 Sessions.....$25 Off Each Session
11+ Session.....$30 Off Each Session

**Speaker Workshops-Check your sessions!**
☐ Invasive Cardiology
☐ Heart Rhythm Procedures
☐ Basic Interventional Radiology
☐ Diagnostic Radiology
☐ Interventional Radiology
☐ Advanced Interventional Radiology
☐ Radiation Oncology
☐ Auditing for Radiation Oncology
☐ Medical Oncology-Physician/Freestanding
☐ Medical Oncology-Hospital

| ATTENDEE'S NAME: | | CREDENTIAL(S): | TITLE: |
|---|---|---|---|
| PHONE NUMBER: | EXT: | EMAIL: | |
| COMPANY/ORGANIZATION: | | SEMINAR LOCATION: (please mark) PA  TX  GA | |
| ADDRESS: | | CITY: | STATE: |
| ZIP: | PHONE: | | FAX: |
| CHECK#: | | CREDIT CARD: (check if used) VISA  AMEX  MC | |
| NAME ON CARD: | | CID#: | EXP. DATE: |
| CREDIT CARD NUMBER: | | | CREDIT CARD BILL ZIP CODE: |

**Multiple Attendees:** Participants must register at the same time and Coding Strategies, Inc. must receive a consolidated payment for all attendees to have this 10% discount apply for each attendee.

**Early Registration** for AAPC Discounts: To qualify for Early Registration or AAPC discounts, enrollment and payment forms must be received BEFORE NOVEMBER 10, 2006. You must also submit a copy of your AAPC membership card to qualify for the AAPC discount.

**Cancellation:** All cancellations must be received in writing at least 30 business days prior to the seminar in order to receive a full refund. Cancellations made after this date are subject to a $100.00 charge. Registrants who do not attend and do not cancel are responsible for the full registration fee. Enrollees can be transferred to receive pending in 10 business days prior to the seminar. Call CSI at 1-877-8-CODING. Coding Strategies, Inc. will not incur any refunds due to inclement weather. Please make your travel plans as non-cancelable accordingly.



**For All of Your Coding Needs Call 1-877-8-CODING**
* Auditing * Education * Reference Guides * Coding Support Services *
FAX 770-445-8487 @ www.codingstrategies.com
5041 Dallas Highway, Ste. 508, Powder Springs, GA 30127
*Coding Strategies, Inc. 5041 Dallas Highway, Ste. 508 Powder Springs, GA 30127 1-877-8-CODING Fax 770-445-8487*

11/16/06 12:49          770-445-9497          847-797-9523          □ 1/1



# Are You Receiving Proper Reimbursement?
## CSI's 7th Annual CROWN Seminar Series
*Philadelphia, PA - December 4-7 | Dallas, TX - January 8-11 | Atlanta, GA - January 22-25*

## Heart Rhythm Procedures

This session is designed specifically for anyone responsible for Heart Rhythm Services coding and reimbursement. This seminar will introduce new 2007 codes and will review coding guidelines for heart rhythm procedures in detail.

**Items to be discussed include:**
* Pacemaker Procedures
* Implantable Cardioverter-Defibrillator (ICD) Procedures
* Cardiac Resynchronization Therapy
* Diagnostic and Therapeutic Electrophysiology Procedures
* Holter Monitor and Cardiac Event Monitor Procedures
* EKG and stress testing
* Noninvasive cardiac imaging
* And Much More!

## Attendees receive more at CROWN!!

Attendees receive more at CROWN than any other seminar in the industry! Sessions include 2007 Navigator Reference Guide(s) (valued at $249.00 ea.), helpful coding tips, hands-on participation, networking opportunities, expert speakers, comprehensive job-aids, on-line resources, Web-Client Access for 2007, multimedia presentations, lunch with the speakers, and Coding Resource Center!

**For More Information Visit:**
http://www.codingstrategies.com/crown.htm

### Registration - $585 Per Session
**Multi-Session Discounts**
3 - 5 Sessions ....... $20 Off Each Session
6 - 10 Sessions ...... $25 Off Each Session
11+ Sessions ......... $30 Off Each Session

**Available Workshops - Check any desired**
☑ Heart Rhythm Procedures
☐ Invasive Cardiology
☐ Basic Interventional Radiology
☐ Diagnostic Radiology
☐ Interventional Radiology
☐ Advanced Interventional Radiology
☐ Radiation Oncology
☐ Auditing for Radiation Oncology
☐ Medical Oncology-Physician/Nonbilling
☐ Medical Oncology-Hospital

**Approved for Category A AART and AAPC CEU's**



| ATTENDEE'S NAME: | | CREDENTIAL(S): | TITLE: |
|---|---|---|---|
| PHONE NUMBER: | EXT | EMAIL: | |
| COMPANY/ORGANIZATION: | | SEMINAR LOCATION (select one)   PA   TX   GA | |
| ADDRESS: | | CITY: | STATE: |
| ZIP: | PHONE: | | FAX: |
| CHECK#: | | CREDIT CARD: (circle one)   VISA  AMEX  MC | |
| NAME ON CARD: | | CCV#: | EXP. DATE: |
| CREDIT CARD NUMBER: | | CREDIT CARD BILL ZIP CODE: | |

Multiple Attendees Participants must register at the same time and Coding Strategies, Inc. must receive a beneficiated payment for all attendees no later than 10 business days prior to the event.

Cancellations: All cancellations must be received in writing at least 30 business days prior to the seminar in order to receive a full refund. Cancellations made after this time are subject to a $125.00 charge. Registrants who do not cancel and do not attend are responsible for the full registration fee. Enrollments to be transferred to another person up to 10 business days prior to the seminar. Call CSI at 1-877-4-CODING. Coding Strategies, Inc. will bill you any refunds due to business weather. Please make your travel plans to accommodate accordingly.

**CSI** Coding Strategies, Inc.

For All of Your Coding Needs Call 1-877-4-CODING
* Auditing * Education * Reference Guides * Coding Support Services
Fax: 770-445-9497 @ www.codingstrategies.com
5241 Dallas Highway, Ste. 303, Powder Springs, GA 30127

3/20/07 8:38     770-445-0487     John Zulaski     B 1/1

*Practice Management 104*     X

# >>SAVE With CSI's Coding E-Cash!

## Visit CSI's NEW Online Shop For Specialty Coding Products & More

### >We make it easy to order the coding tools you need!

For your convenience CSI has a new E-Commerce site! Order references at CSI's NEW online shop & receive E-Cash to use towards your purchase! Click on any of the shopping carts on CSI's website to make all of your product purchases and/or register for upcoming seminars, audio/web conferences and other events at htt://shop.codingstrategies.com/.

Use the promotional code when you order online and we'll give you $20 E-Cash to use towards your purchase.* This is a limited time offer, don't miss out! Order TODAY!

*One time only promotional code can not be used in conjunction with other offers.
**Offer expires April 15, 2007

### >Reference tools from THE Specialty Experts!

CSI Navigator reference guides are designed to clearly explain procedures, documentation requirements, and associated compliance concerns and guidelines. Depending on the specialty, our reference guides & job aids offer case studies, test documentation, frequently asked questions, definitions, coding tips, state-of-the-art graphics and so much more! CSI Navigators are a true benefit to physicians, medical coding staff, practice managers, and any other professional involved in specialty services. CSI reference guides include:

- Laminated Job Aids
- Web Client Access
- Coding Resource Center
- Other Industry Resource Links
- And more!

### >Designed for your specialty coding needs!

- Radiation Oncology
- Invasive Cardiology
- Diagnostic Radiology
- Interventional Procedures
- Heart Rhythm Procedures
- Medical Oncology Hospital
- Medical Oncology Physical/Freestanding
- Sub-Specialty Guides & so much more!



Visit CSI's New Online Shop!
http://shop.codingstrategies.com/

Promotional Code:

**PREIJX0894**

## Ordering has never been so easy!

STEP 1. Go to CSI's NEW Online Shop at http://shop.codingstrategies.com/.

STEP 2: Choose the specialty Navigator Reference guide of your choice & add to your shopping cart.

STEP 3: During the check-out process, type in the above promotional code & save $20 off the total product(s) purchase!



## CSI
### Coding Strategies, Inc.
Fax 822767

For All of Your Coding Needs Call 1-877-8-CODING
* Auditing * Education * Reference Guides * Coding Support Services
Fax: 770-445-0487  •  www.codingstrategies.com
5041 Dallas Highway, Ste. 606, Powder Springs, GA 30127

To remove your number from this automatic list, please call 877-826-3464. Allow 72 hours to process your request. Coding Strategies, Inc. Fax#: 770-445-0487

# EXHIBIT 2

Case No. 08 CV 1794                                          3007051-
ELS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PRACTICE MANAGEMENT SUPPORT SERVICES, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) Case No. 08 CV 1794 ) |
| v. | ) Judge James F. Holderman ) |
| CODING STRATEGIES, INC. | ) ) |
| Defendant. | ) |

## AFFIDAVIT OF MELODY MULAIK

NOW COMES your Affiant, Melody Mulaik, being duly sworn on oath deposes and states as follows:

1.    I am the President of Coding Strategies, Inc., and have held that same position since February 14, 1998.

2.    As President, my responsibilities include involvement with, and general oversight of marketing, supervision of sales employees, supervision of marketing employees, and establishing corporate policies, practices and procedures.

3.    Coding Strategies, Inc. is a Georgia based medical coding and compliance firm that specializes in auditing, education, reference tools and support services nationwide. The clients of Coding Strategies, Inc. are hospitals, physician practices, and third-party providers of medical coding and billing services to healthcare providers.

4.    Practice Management Support Services, Inc. is a Chicago based company provides custom billing, accounts receivable management, and consultation services for a wide variety of medical specialties. Practice Management Support Services, Inc. is the type of company that would typically be a customer of Coding Strategies, Inc.

5.    The Healthcare Billing and Management Association (HBMA) for Third Party Medical Billers is a non-profit national trade association for professional billing companies.

6.    Coding Strategies, Inc. is a vendor member of the HBMA and employees of Coding Strategies, Inc. attend the HMBA Conference each year as part of the marketing process.

7.    In 2005, I attended the 2005 HBMA Conference, from September 8th through September 10th, with Marketing Director Cameron Massey and Sales Manager Paul Andre.

8.    As Sales Manager, Paul Andre was responsible for selling Coding Strategies, Inc. products and services to customers, business development, supporting sales initiatives, and establishing, developing, and maintaining relationships with customers.

9.    As Marketing Director, Cameron Massey was responsible for management of the marketing process for and client acquisition strategies for Coding Strategies, Inc.

10.    Coding Strategies, Inc. had a booth at the September 2005 HBMA Conference.

11.    At the September 2005 HBMA Conference, employees of Coding Strategies, Inc. made contacts with potential customers and acquired their contact information.  That information was then passed on to a Coding Strategies, Inc. clerical employee who updated a database of the contacts and incorporated information that was obtained at the HBMA conference.

12.    Prior to the September 2005 HBMA Conference, Coding Strategies, Inc. did not have the fax number for Practice Management Support Services, Inc.

13.    The document attached as Exhibit A to this affidavit is a document that is made and kept in the regular course of business at Coding Strategies, Inc.

14.    The document contained in Exhibit A to this affidavit is a listing of the contact information of various individuals with whom representatives of Coding Strategies, Inc., met at the HBMA Conference, in Chicago, Illinois, in September of 2005 and who expressed an interest in purchasing products and / or services.

15.    It was and is the regular practice of Coding Strategies, Inc., to create documents like the one in Exhibit A in the regular course of business promptly following attendance at conferences like the HBMA Conference.

16.    The purpose of Exhibit A was to record and memorialize the contacts that were made by Coding Strategies, Inc. employees at the Fall 2005 HMBA Conference.

17.    Exhibit A to this affidavit is a true and accurate copy of a Coding Strategies, Inc., Excel spreadsheet, containing contact information of individuals met at the Fall 2005 HBMA Conference, including the information of John Zulaski, that was created on or about September 15, 2005.

18.    The contact information provided by John Zulaski was inputted into Exhibit A when the document was created on September 15, 2005.

19.    Other than the meeting and exchange of information at the aforementioned HBMA Conference, there would be no reason why John Zulaski's name and the contact information of Practice Management Support Services, Inc. would be included in Exhibit A.

20.   Following than the meeting and exchange of information at the aforementioned HBMA Conference with John Zulaski, it was the custom and practice of Coding Strategies, Inc. sales persons to call the contacts made at the HBMA Conference in advance of sending them a written letter.

21.   The document contained in Exhibit B to this affidavit is a document that is made and kept in the regular course of business at Coding Strategies, Inc.

22.   The document contained in Exhibit B to this affidavit is a letter sent in the regular course of business to individuals met by Paul Andre at the HBMA Conference, in Chicago, Illinois, in the Fall of 2005.

23.   It is the regular practice of Coding Strategies, Inc., to create documents like the one in Exhibit B in the regular course of business following the meeting of business contacts at conferences like the HBMA Conference.

24.   Exhibit B to this affidavit is a true an accurate copy of a Coding Strategies, Inc., letter that was sent by Paul Andre to John Zulaski from Paul Andre on October 7, 2005. The letter states "I enjoyed meeting you during HBMA's Fall Meeting in Chicago, IL in September and most recently speaking with you... Do you have any auditing or education needs at this time? Please contact me for a proposal on our consulting services or on-site training programs today!  We look forward to earning your business."

25.   Other than the meeting and exchange of information at the aforementioned HBMA Conference with Paul Andre, there would be no reason why John Zulaski's would be sent the letter displayed in Exhibit B.

26.   Exhibits A and B as well as Coding Strategies' customary business practices indicate that it is likely that sales person Paul Andre spoke with John Zulaski at the HBMA Conference in Chicago, Illinois, in the Fall of 2005 and that during this meeting Zulaski expressed an interest in obtaining information from Coding Strategies, Inc. related to specialty specific products and services.

27.   Exhibits A and B, along with the custom and practice of Coding Strategies, Inc show that it is likely that John Zulaski, a representative of Practice Management Support Services, Inc., made contact with Coding Strategies, Inc. at the Fall 2005 HBMA Conference, and specifically with Paul Andre, and provided his company's contact information, including the fax number of Practice Management Support Services, Inc.

Further, Affiant sayeth not.

_Melody Mulaik_

Melody Mulaik

Subscribed and sworn to before me this __1__

day of _July_____, 2008.

_Christine Strange_

Expires: 6/30/2012